**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CARL S. FULMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 1:11-cv-00389-TWP-TAB** |
| | ) | |
| **M & M TRANSPORT SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT M&M TRANSPORT SERVICES, INC.'s MOTION FOR A STAY OF EXECUTION OF JUDGMENT**

Pursuant to Rule 62 of the Federal Rules of Civil Procedure Defendant, M&M Transport Services, Inc. ("M&M Transport"), by counsel, submits this Motion for a Stay Execution of Judgment. In support of this motion, M&M Transport states as follows:

## I. Background

Plaintiff Carl Fulmore was employed with M&M Transport from December 8, 2006 until February 22, 2010. Fulmore filed a five count amended complaint alleging claims of intentional race discrimination, race retaliation and workers compensation retaliation. *See* 42 U.S.C. §§ 1981, 1981(a), 2000(e), *et seq.*; Ind. Code § 22-3-2-15. In addition, Fulmore alleged violations under the Family Medical Leave Act ("FMLA"), the Indiana Wage Payment Statute, and the Indiana Wage Claims Statute during his employment. *See* 28 U.S.C. §§ 2601 *et seq.*; Ind. Code §§ 22-2-5 and 22-2-9. The Court granted Defendant's motion for partial summary judgment. (Doc No. 62) Two claims proceeded to trial: 1) a claim for harassment on the basis of race under Title VII and §1981; and, 2) a minor claim for unpaid wages under the Indiana Wage Claim Statute.

Following trial, the jury entered a verdict in the amount of $400,000.00 in compensatory damages and $2,850,000.00 in punitive damages on the harassment claim and $113.00 on the wage claim. On the same date, the Court entered judgment on the verdict. (Doc. No. 132).

Defendant is in the process of securing and filing with this Court *supersedeas* bonds in the total amount of $3,500,000.00, an amount Defendant estimates is sufficient to protect the Plaintiff's judgment, statutory interest and claim for attorney's fees. Defendant's insurer, Vigilant Insurance Company, has issued a bond for $500,000.00, which is being filed with the Court contemporaneously with this Motion. Defendant also is working with its insurance broker to secure a separate bond in the amount of $3,000,000.00 to be issued by Corepoint Insurance Company on or before August 26, 2013. (*See* Exhibit A: Declaration of Mark Warsofsky.) These bonds will maintain the status quo until the Court rules on post-trial motions and through appeal, if necessary.

Defendant is preparing post-trial motions under Rule 50(b) for judgment notwithstanding the verdict, and under Rule 59 for a new trial and in the alternative for remittitur of the compensatory and punitive damage awards. Pursuant to the rules, Defendant's post-trial motions are due 28 days after the entry of judgment, on September 3, 2013.

## II. Argument

Defendant reasonably believes that its post-trial motions will significantly alter the judgment in this matter.

For example, Plaintiff's evidence that he suffered a hostile work environment claim included offensive "jokes" about President Barak Obama's election and racially offensive language that Plaintiff heard, or heard about from other employees, but that was not directed at him. Although Plaintiff testified that he heard a racially offensive "joke" told by a company vice president, the evidence is compelling that the incident occurred in 2011 a year after Plaintiff's

employment was terminated. There is a significant question whether the totality of the evidence adduced by Plaintiff is sufficient as a matter of law to sustain his hostile work environment claim. *See, e.g., Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (many incidents were not directed at plaintiff; impact of those incidents are not as great as impact of harassment directed at the plaintiff); *see also*, *McPhaul v. Bd. of Comm. of Madison Cty.*, 226 F.3d 558, 567 (7th Cir. 2000) ("When such harassment is directed at someone other than the plaintiff, the "impact of [such] `second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." citing *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144 (7th Cir.1997)).

There also is a significant question whether the punitive damages award can withstand post-trial scrutiny. Plaintiff failed to adduce evidence that his complaints, or the complaints of his co-workers to the extent those complaints are relevant to his claim for damages, ever were reported to the Defendant's controller or president according to the Defendant's anti-harassment policy. Plaintiff claims he complained to his manager, Norm Brennan, and that he felt Brennan did not adequately respond to his complaints. If Plaintiff felt dissatisfied with Brennan's response to his complaints, he should have contacted the controller or the president and alerted them to Brennan's failure to respond adequately. There is no evidence in the record that either the president or the controller had knowledge of hostile environment issues at Defendant's facility in Indianapolis. Because Plaintiff has not shown that the Defendant engaged in a discriminatory practice with malice or with reckless indifference to Plaintiff's rights, the punitive damage award should be vacated. *See, e.g., May v. Chrysler Group, LLC*, 716 F.3d 963, 2012 U.S. App. LEXIS 26916 *10 (7th Cir. 2013) (per curiam).

Even if Defendant's Rule 50(b) motion is not granted, there is a significant likelihood the Court will grant Defendant's motion for a new trial or that the judgment will be reduced. For

example, the verdict on compensatory damages in the amount of $400,000 is not supported by evidence that Plaintiff suffered a physical or psychological injury, or that he received any counseling or other medical or psychological treatment. The sole evidence of injury is Plaintiff's testimony that he was upset, angry and that he felt uncomfortable when he heard the comments.[1] A review of comparable case law in this Circuit indicates that proof of much more harm is required to sustain a compensatory award of the size awarded here. To determine whether an award of compensatory damages is excessive, courts consider "whether the damages awarded (1) were monstrously excessive; (2) had no rational connection between the award and the evidence; and (3) were roughly comparable to awards made in similar cases." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483-84 (7th Cir. 2003). Here, the damages are monstrously excessive and have no rational connection to the evidence. In addition, the damages are not comparable to awards made in cases where plaintiffs suffered physical or psychological pain and suffering. *See, EEOC v. Autozone, Inc.* 707 F.3d 824, 833-34 (7th Cir. 2013) in which the plaintiff suffered severe back pain as a result of defendant's discrimination. The court in *Autozone* cited comparable cases approving damage awards ranging from $75,000 to $250,000 to plaintiffs with injuries significantly more severe than Plaintiff's.

If the punitive damages award is not vacated, it should be significantly reduced. The Supreme Court has established a three-prong test to determine whether a punitive damages award is excessive: the degree of reprehensibility of the defendant's conduct, the ratio between the compensatory and punitive awards and the amount of statutory penalties that could be imposed for comparable conduct. *BMW v. Gore*, 517 U.S. 559, 574-85 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418-28 (2003). Here, the size of the punitive award

[1] Most of the justification for Plaintiff's damages was based on the consequences of his termination for cause, an action this Court determined on summary judgment to be a legitimate, non-discriminatory decision for which no damages could be awarded.

cannot be justified in light of evidence that Plaintiff never notified higher level officers in the company that he was experiencing a racially hostile work environment or that he felt Brennan was not responsive to his concerns.

The Court should view the 7:1 ratio of punitive damages to compensatory damages here with suspicion and, if the award survives in any form, reduce it to a 1:1 ratio to compensatory damages. *See, e.g., Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004)(court remitted $1.5 million punitive damages award to $600,000); *Bach v. First Union Nat'l. Bank,* 486 F.3d 150, 156-57 (6th Cir. 2007)(court remitted $2.2 million punitive damages award to $400,000). Finally, the cap on damages under Title VII and the use of liquidated damages in other employment discrimination statutes provide useful measures of the outer limits of an employer's exposure to punitive damages under 42 U.S.C.§1981. *See, e.g., Williams*, 378 F.2d at 798.

Rule 62(a) imposes an automatic 14-day stay on the execution of the judgment. That stay expires on August 20, 2013. However, Rule 62(b) grants the Court discretion to stay the execution of a judgment pending a decision on Rule 50 and Rule 59 motions. Rule 62(b) provides specifically that the Court may, on appropriate terms for the opposing party's security, stay the execution of the judgment, or any proceedings to enforce it, pending disposition of motions under Rules 50, 52(b), 59 and 60. Rule 62(d) permits the filing of a *supersedeas* bond to maintain the status quo on appeal.

Here, Defendant is seeking a stay of execution so that it can secure and file *supersedeas* bonds on or before the date its post-trial motions are due. The *supersedeas* bonds also will satisfy the requirements of Rule 62(b) while the post-trial motions are pending and Rule 62(d) in the event there is an appeal from the final judgment. The stay will serve the interests of justice by protecting Plaintiff's judgment until the issues raised in post-trial motions and appeal are

resolved. A stay also will insure that no collection attempts are made prior to the time the Court decides whether the judgment should be vacated or reduced.

Defendant's proposal to obtain *supersedeas* bonds in the amount of $3,500,000.00 is adequate to maintain the status quo pending resolution of post-trial motions and on appeal. Allowing Plaintiff to execute on the current judgment before the Court has the opportunity to consider and rule on post-trial motions and Defendant has an opportunity to file a notice of appeal would alter the status quo by allowing Plaintiff to execute a judgment that may be much larger today than after post-trial motions or an appeal are decided. And, to the extent Plaintiff collected amounts from Defendant in excess of a final judgment, that conduct would spawn additional conflict between the parties (*e.g.*, claims by Defendant against Plaintiff for disgorgement of funds improperly collected).

Defendant therefore requests that the Court exercise its discretion to grant a stay of the execution of the judgment under Rule 62(b) with the understanding that Defendant will submit *supersedeas* bonds in the aggregate amount of $3,500,000.00 for the Court's approval, that those bonds will maintain the status quo during the pendency of the Defendant's post-trial motions and, that upon further application by the Defendant in the event of an appeal, the bonds will satisfy the requirements of Rule 62(d). *See, e.g., Wolfgang v. Mid-American Motor Sports, Inc.*, 914 F.Supp. 434, 441 (D. Kan. 1996)(court ordered that bonds filed prior to decision on post-trial motions would remain in effect on appeal).

## III. Conclusion

For the reasons stated in this motion, Defendant respectfully requests that the Court:

a) exercise its discretion under Rule 62(b) to stay execution of the judgment pending a decision on all post-trial motions;

b) provide Defendant with an additional 14 days to submit its *supersedeas* bonds for approval by the Court; and,

c) grant Defendant leave to seek approval of the bonds for purposes of Rule 62(d) in the event of an appeal from the final judgment of this Court to the United States Circuit Court for the Seventh Circuit.

Respectfully submitted,

/s/ Michael W. Padgett

Michael W. Padgett
Jackson Lewis LLP
10 West Market Street, Suite 2400
Indianapolis, Indiana 46204
Tel: (317) 489-6930
Fax: (317) 489-6931
E-mail: padgettm@jacksonlewis.com

Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2013, a copy of the foregoing *Defendant M&M Transport Services, Inc.'s Motion for a Stay of Execution of* Judgment was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Richard L. Darst
Cohen, Garelick & Glazier
8888 Keystone Crossing Boulevard, Suite 800
Indianapolis, Indiana 46240-4636
rdarst@cgglawfirm.com

/s/ Michael W. Padgett
Michael W. Padgett

4825-3360-6421, v. 1