# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARL S. FULMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00389-TWP-TAB |
| | ) | |
| M & M TRANSPORT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S POST TRIAL MOTIONS

This matter is before the Court on Defendant M&M Transport Services, Inc.'s ("M&M Transport") Motion for Judgment as a Matter of Law (Dkt. 153) and Motion for New Trial (De Novo) or Remittitur under Rule 59 (Dkt. 155). Following a trial held on August 5 through August 6, 2013, on Plaintiff Carl S. Fulmore's ("Mr. Fulmore") claims of hostile work environment and violation of the Indiana Wage Claims Statute, a jury found in Mr. Fulmore's favor and entered a verdict for both compensatory and punitive damages. Finding that the jury had a legally sufficient evidentiary basis to find for Mr. Fulmore on his hostile work environment claim, the Court **DENIES** M&M Transport's Motion for Judgment as a Matter of Law (Dkt. 153). The Court further finds that the record does not support granting a new trial, but the compensatory and punitive damages awarded Mr. Fulmore were excessive. Therefore, M&M Transport's Motion for New Trial or Remittitur (Dkt. 155) is **DENIED** as to a new trial but **GRANTED** as to remittitur.

## I.      BACKGROUND

M&M Transport is a nationwide transportation provider for some of the largest retail, manufacturing, distribution and logistics companies in the United States and does business in

Indianapolis, Indiana. Nationwide, it employs approximately 400 employees; however, the Indianapolis location employs approximately 135 employees of which approximately 120 are drivers. Mr. Fulmore was employed as an over-the-road truck driver with M&M Transport in its Indianapolis location from December 2006 until he was terminated in February 2010. The dispute in this matter arises from Mr. Fulmore's claims against his former employer that he was subjected to discrimination and harassment on the basis of his race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981 and a claim for unpaid wages. Originally, Mr. Fulmore filed a five-count complaint against M&M Transport, alleging claims of intentional race discrimination, race retaliation, workers' compensation retaliation, violations of the Family Medical Leave Act ("FMLA"), the Indiana Wage Payment Statute, and the Indiana Wage Claims Statute. The Court granted M&M Transport's Partial Motion for Summary Judgment on Mr. Fulmore's claims for race retaliation, discriminatory termination, workers' compensation retaliation under the FMLA, and violation of the Indiana Wage Payment Statute. *See* Dkt. 62.

The parties went to trial on the hostile work environment claim and for violation of the Indiana Wage Claims Statute. At the close of Mr. Fulmore's case, M&M Transport moved orally for judgment as a matter of law and the Court denied the motion. Following deliberations, the jury returned a verdict in favor of Mr. Fulmore for $400,000.00 in compensatory damages, $2,850,000.00 in punitive damages, and $113.00 for damages pursuant to the Indiana Wage Claims Statute. On August 6, 2013, the Court entered judgment. Thereafter, M&M Transport filed, and the Court granted, a Stay of Execution of the Judgment and Approval of supersedeas bonds in the amount of $3,500,000.00. *See* Dkt. 151. M&M Transport now seeks relief from the verdict under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, and Rule 59 for a new trial, or alternatively for remittitur of the damages award.

## II. <u>LEGAL STANDARDS</u>

**A.    Rule 50(b) Motion**

Rule 50(a)(2) of the Federal Rules of Civil Procedure provides:  "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and the facts that entitle the movant to the judgment."  If a Rule 50(a) motion made at the close of all the evidence is not granted, the movant may renew the motion no later than 28 days after the entry of judgment.  Fed. R. Civ. P. 50(b).  "Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'"  *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting Fed. R. Civ. P. 50(a)).  When deciding a Rule 50 motion, the court will construe the evidence strictly in favor of the party who prevailed before the jury and will examine the evidence only to determine whether the jury's verdict could reasonably be based on that evidence.  *Id.*  The court does not make credibility determinations or weigh the evidence. *Id.*  Although the court reviews the entire record, the court will disregard all evidence favorable to the moving party that the jury was not required to believe.  *Id.*

**B.    Rule 59 Motion**

Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides:  "The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:  after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "A court may only order a new trial if the jury's 'verdict is against the manifest weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to

the moving party." *Marcus & Millhap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011) (quoting *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010)).  "A verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja,* 546 F.3d 423, 427 (7th Cir. 2008) (citation omitted).

## C.  Compensatory and Punitive Damages

"[C]ompensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  Compensatory damages redress a concrete loss suffered by a plaintiff as a result of a defendant's wrongful conduct. *Id.*  Punitive damages, in contrast, "are aimed at deterrence and retribution." *Id.*  "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.*

When reviewing compensatory damages awards, the court considers "(1) whether the award is 'monstrously excessive'; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is comparable to those in similar cases." *Marion Cnty. Coroner's Office v. EEOC*, 612 F.3d 924, 930–31 (7th Cir. 2010).  Punitive damages may be awarded when the defendant is found to have engaged in discriminatory practices with malice or with reckless indifference. 42 U.S.C. § 1981a(b)(1).  *See, e.g., Gile v. United Airlines, Inc.* 213 F.3d 365 (7th Cir. 2000); *Slane v. Mariah Boats, Inc.,* 164 F.3d 1065 (7th Cir. 1999).  When reviewing punitive awards, the Supreme Court instructs the court to consider: (1) the degree of reprehensibility of the conduct; (2) the disparity between actual harm and the punitive award; and (3) a comparison of the award to the civil penalties authorized or imposed in comparable cases. *State Farm*, 538 U.S. at 418.

# III.  DISCUSSION

M&M Transport seeks three remedies in the alternative.  First, it seeks judgment as a matter of law under Rule 50(b).  Second, it seeks a new trial under Rule 59(a).  Third, it seeks a remittitur of the damages awarded to Mr. Fulmore.  The Court will address each requested remedy in turn.

## A.    Motion for Judgment as a Matter of Law

Under the plain language of the rule, a Rule 50(b) motion may not be considered unless a preverdict motion for judgment as a matter of law was made under Rule 50(a).  It is also the rule that issues that were not adequately preserved in a Rule 50(a) motion made at the close of evidence may not be included in a Rule 50(b) motion.  *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 777 (7th Cir. 2002).  As an initial matter, Mr. Fulmore contends that M&M Transport failed to preserve a Rule 50(b) motion when it made its Rule 50(a) motion at the close of trial.  Particularly, he argues that M&M Transport's Rule 50(a) motion did not discuss the elements of a hostile work environment claim, so it cannot now raise these elements in its Rule 50(b) motion.  The Court disagrees with this overly restrictive view of Rule 50(b)'s preservation requirement.  At the close of Mr. Fulmore's case, M&M Transport orally moved for judgment as a matter of law.   Specifically, M&M Transport argued that Mr. Fulmore's evidence came "nowhere near the standard that courts look for in terms of establishing a hostile and abusive workplace."  Dkt. 136 at 63.  M&M Transport asserted that the evidence thus far had not established the existence of a hostile work environment, thereby implicitly invoking the elements of a hostile work environment claim.

Likewise, the Seventh Circuit has held that a failure to expressly state all grounds or expressly state a sufficient argument when the motion is presented at the close of the evidence

will not result in waiver if previously presented arguments—in an earlier Rule 50(a) motion, in trial briefs, in motions *in limine*, on summary judgment, or otherwise—have made the moving party's position clear for the court and opposing party. *Laborers' Pension Fund*, 301 F.3d at 777–78; *Petit v. City of Chi.*, 239 F. Supp. 2d 761, 767 (N.D. Ill. 2002). Here, M&M Transport made its position clear during trial, in prior arguments, and in pleadings. In addition to arguments made during trial, prior to trial the parties extensively litigated the impact of the summary judgment ruling on the admissibility of evidence related to Mr. Fulmore's discipline and termination. Further, the parties litigated these issues in motions *in limine* and made relevant arguments during settlement of jury instructions. Based on these circumstances, the Court will address the Rule 50(b) motion on the merits.

To establish a hostile work environment claim, a plaintiff must establish the following: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009). M&M Transport contends that Mr. Fulmore failed to satisfy the final two elements of a hostile work environment claim, specifically: that the harassment he experienced was so severe or pervasive that it altered the conditions of his work environment by creating a hostile or abusive situation, and that there is a basis for employer liability.

### 1. Severity of Harassment

First, to determine whether workplace harassment was sufficiently severe or pervasive to be actionable, courts look at "all of the circumstances, including the frequency of the discriminatory conduct, how offensive a reasonable person would deem it to be, whether it is

physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013). Second, an employer "may be found liable for a hostile work environment created by an employee who was not the plaintiff's supervisor only where the plaintiff proves that the employer has been negligent either in discovering or remedying the harassment." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004) (internal quotation marks omitted). M&M Transport contends that at trial, Mr. Fulmore testified he was subjected to three categories of harassing conduct: (1) discriminatory discipline; (2) discriminatory distribution of route assignments; and (3) racially offensive comments and jokes.

### a.    Discriminatory Discipline and Distribution of Route Assignments

M&M Transport contends that Mr. Fulmore improperly presented evidence about his discipline. However, on the first day of trial, the Court found that Mr. Fulmore could present evidence concerning the totality of the workplace conditions, because harassment is not limited to statements but can include conduct, such as discriminatory route assignments or discipline. M&M Transport further argues that Mr. Fulmore presented no evidence that the discipline he received was racially motivated, aside from Mr. Fulmore's and witness Tony Webster's perception that African-American drivers received harsher punishment than white drivers. Additionally, M&M Transport contends that Mr. Fulmore's evidence that he received inferior routes based on race is supported only by Mr. Fulmore's perception and not actual knowledge. The evidence at trial on route assignments came from Mr. Fulmore and Tonya Alvarez ("Ms. Alvarez"). Mr. Fulmore testified that once Dave Raney ("Mr. Raney") became a dispatcher, he began receiving less palletized routes, and that less senior white employers were given these

routes.  As evidence of racial animus, Mr. Fulmore testified that he overheard Mr. Raney comment: "These niggers always complain about everything. You can't please them no matter what you do."  Additionally, Ms. Alvarez, a white employee who worked in the office, testified that she observed that Mr. Raney kept preferred routes in a drawer and saved them for white employees.  The jury heard evidence from Norman Brennan ("Mr. Brennan"), the senior logistics manager at M&M Transport and Mr. Fulmore's supervisor.  Although Mr. Brennan testified that around this same time, there were material changes made to the way routes were assigned that did not involve race, the Court must disregard any evidence favorable to the moving party that the jury was not required to believe.  The jury was not required to believe Mr. Brennan that the cause for Mr. Fulmore receiving fewer palletized routes was the change to the assignment system.  That aside, there was some evidence before the jury that African-American drivers received less desirable route distributions.

With respect to discriminatory discipline, the Court agrees with M&M Transport that there was not sufficient evidence on which a reasonable jury could have relied to support a verdict of a hostile work environment on this claim.  There was no evidence of racial animus relating to Mr. Fulmore's discipline.  Without evidence that Mr. Fulmore's supervisors who disciplined him did so with a discriminatory purpose, this evidence is insufficient to show a hostile or severe environment.

### b.    Racial Statements

Next, M&M Transport contends that the evidence of racial comments and jokes was insufficient to support the jury's verdict.  M&M Transport breaks down the evidence of this nature into three categories:  (1) statements directed at Mr. Fulmore; (2) statements Mr. Fulmore

overheard, but were not directed at him; and (3) statements Mr. Fulmore never overheard, but heard about from other employees.

In the first category, Mr. Fulmore testified that coworker's Gary McCormick and Rick Sperry ("Mr. Sperry") made racial comments after President Obama was elected president—such as, "the day that a black man became the president, it would be a cold day in hell, and that's probably why it's so cold out there today" and "when a black man becomes president, that would be when pigs fly, so that's why we have swine flu." Mr. Fulmore also testified that he heard Mr. Sperry say "at the inauguration ceremony, they will probably be serving fried chicken and eating watermelons."

M&M Transport points out that Mr. Fulmore stipulated he was not at work between August 28, 2008 and May 28, 2009, during which time President Obama was elected and inaugurated and that the jury was instructed of this stipulation and that it must accept it as being proven for purposes of this case. However, it is reasonable that the jury believed the racial jokes regarding President Obama's presidential election began prior to August 2008 and continued upon Mr. Fulmore's return to work in May 2009. The jury heard ample testimony that racial jokes regarding President Obama were prevalent at M&M Transport surrounding the 2008 election. When asked how often jokes were made about the President, Mr. Fulmore testified "every time we had to stay in the break room waiting on our routes, someone would always say something inappropriate." (*See* Dkt. 134 at 58). Ms. Alvarez testified that there was "lots of controversy" following the 2008 presidential election; that co-workers hid her Obama mug in a drawer and made comments about the president having spinners on his limousine and serving watermelon and fried chicken at the inauguration. Todd Gatling ("Mr. Gatling") testified that he heard and reported to Mr. Brennan, racially offensive comments regarding President Obama

following the election. Even Mr. Brennan testified that another dispatcher had complained to him about employees making racial statements about "the Obama stuff." Construing the evidence in favor of Mr. Fulmore, it is reasonable if the jury found some evidence in this regard.

In the second category, Mr. Fulmore testified to hearing numerous racially offensive jokes and statements, including use of the word "nigger", as often as every week. In the third category, Mr. Fulmore was told by Mr. Gatling and others about racial comments made. Some of these statements occurred after Mr. Fulmore's employment with M&M Transport had ended. M&M Transport argues that comments not directed at Mr. Fulmore cannot support a verdict for hostile work environment. The Seventh Circuit has held:

> The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that the worker's working environment was actually made unbearable, as the worker claims. Offense based purely on hearsay or rumor really is 'second hand'; it is less credible, and, for that reason and also because it is less confrontational, it is less wounding than offense based on hearing or seeing . . . ; and it is also more difficult for the employer to control.

*Yuknis v. First Student, Inc.*, 481 F.3d 552, 555–56 (7th Cir. 2007). But courts are not to "carve up" incidents of harassment and analyze them separately. *Hall v. City of Chi.*, 713 F.3d 325, 331 (7th Cir. 2013). And while second-hand racial comments may not in isolation rise to the level of being severe and pervasive, the frequency of the overheard statements and the jokes made directly to Mr. Fulmore—even though the timing of which is unclear—is sufficient evidence upon which the jury could have grounded its verdict. Although the jury was required to accept the stipulated facts as true, it was not required to weigh the credibility of the witnesses in M&M Transport's favor. The Court cannot substitute its view for that of the factfinder, because "witness credibility is often crucial to the jury's determination." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 372 (7th Cir. 2000). Importantly, in deciding a Rule 50 motion, the court

construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *Passananti* at 659. Therefore, the Court finds that a rational jury could have found that Mr. Fulmore perceived a hostile work environment on the basis of the evidence presented during trial.

### c. Objectively Severe or Pervasive

The Court has found that Mr. Fulmore presented evidence that supports a jury finding that he subjectively perceived a hostile work environment. Mr. Fulmore is also required to establish that the environment and harassment was objectively severe or pervasive. To do so, the "environment must be one that a reasonable person would find hostile or abusive." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). The Seventh Circuit has held, "[w]e will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with plaintiff's work performance, and is not physically threatening or humiliating." *Id.*

Here, there is no evidence of any physically threatening behavior, though this does not foreclose Mr. Fulmore's claim. Mr. Fulmore testified that the harassment was not isolated, but lasted throughout his entire employment. The content of the comments are certainly offensive, such as frequent use of the word "nigger," calling an African-American driver "Buckwheat" and "Buttwheat," and the myriad of distasteful jokes including those told by Executive Vice President Ken Fratantuono ("Mr. Fratantuono") at the annual safety meetings. Further, there was evidence at trial that Mr. Fulmore felt so uncomfortable and embarrassed at work that he retreated to his car during "backups" and lunches to avoid being around the other drivers and hearing their racially offensive banter. Mr. Fulmore testified that other African-American drivers also removed themselves from the environment. Given this testimony and the overall evidence

that multiple African-American drivers perceived racial harassment, the Court finds a rational jury could find that the environment was objectively severe or pervasive.

### 2. Employer Liability

M&M Transport also contends that Mr. Fulmore cannot show that M&M Transport knew the environment was racially hostile, and thus there is no basis for employer liability. Mr. Fulmore did not present a supervisor harassment claim, and an employer can only be held liable for a hostile work environment created by a plaintiff's coworkers "if it was negligent in discovering or remedying the harassment." *Bombaci v. Journal Cmty. Pub. Grp., Inc.*, 482 F.3d 979, 983 (7th Cir. 2007).

However, there was evidence at trial that Mr. Fulmore complained to his supervisor, Mr. Brennan, about racial jokes. Specifically, Mr. Fulmore testified that he complained to Mr. Brennan regarding Mr. Sperry's racial statements and about the frequent use of the "N word". The jury was not required to believe Mr. Brennan when he testified that he could not recall if Mr. Fulmore ever made complaints. Additionally, others testified that they, too, complained to Mr. Brennan about racial comments. Mr. Brennan testified that another dispatcher told him about Mr. Raney's comments about the "Obama stuff" and afterwards he believes he spoke with Mr. Raney. However Mr. Brennan did not testify that he directed Mr. Raney to stop making racially offensive comments or jokes; rather Mr. Brennan testified that "everybody was joking in the office about stuff" and "it was overblown". Thus, a rational jury could conclude that M&M Transport was on notice of perceived racial harassment.

Second, M&M argues that although Mr. Brennan could not recall at trial whether he ordered employees to stop telling racial jokes regarding the President after Mr. Fulmore complained, it is reasonable to infer from the record that he did so. The Court does not agree. It

is not within the province of the Court or parties to infer how the jury perceived the evidence. There was no evidence at trial that Mr. Brennan spoke to any individuals who had told the jokes, other than Mr. Raney, and there is no evidence that Mr. Brennan told anyone to stop. Further, Mr. Fulmore argues that "there is no evidence of any discipline, termination, or any other employment action," and that "[i]f [Mr.] Brennan did say anything to unspecified individuals, it only incited them to make more racial statements such as 'These motherfuckers are always complaining' and 'These niggers always complain about everything." Dkt. 177 at 22. Although, evidence of discipline, termination, or other employment action is not a requirement, evidence of some employer response is required. The focus is whether the employer responded "promptly and effectively to the incident." *Porter v. Erie Foods Intern., Inc.*, 576 F.3d 629, 636 (7th Cir. 2009).

Mr. Fulmore alleges, and the evidence supports, that additional racial statements aside from jokes were frequently made. Mr. Fulmore testified that he complained about the frequent use of the word "nigger" by his co-workers and there was testimony that other employees complained to Mr. Brennan about racial statements. For example, Mr. Gatling and Ms. Alvarez complained about Mr. Gatling being called "Buckwheat" and "Buttwheat" by other drivers. As for route assignments, Mr. Fulmore and others complained about their route assignments and their perception that route assignments were based on race. Additionally, an employer without notice can still be "charged with constructive notice where the harassment was sufficiently obvious." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004). At bottom, a rational jury could find that based on the totality of the evidence, Mr. Brennan was aware of the racial harassment at M&M Transport, or that the racial harassment was sufficiently obvious to impose constructive notice.

Additionally, although the date of the meeting is disputed, M&M Transport cannot ignore the undisputed evidence that at one of its annual meetings, its Executive Vice President, Mr. Fratantuono, told a racially offensive joke with a punch line which implicates the stereotype that African-American men want to rape white women. Mr. Brennan testified that in his eyes (referring to the company vice president) they were innocent jokes. Finally, the record is sparse regarding M&M Transport's anti-harassment policy and how it was to be implemented. This bolsters the Court's view that a rational jury could have concluded that M&M Transport was negligent in its discovery and response to the alleged racial harassment.

For all these reasons, the Court finds the record supports the jury verdict under Federal Rule of Civil Procedure 50(b) and M&M Transport's Motion for Judgment as a Matter of Law is **DENIED**.

### 3.     Punitive Damages

M&M Transport contends that the evidence at trial cannot support the verdict for punitive damages. Mr. Fulmore can recover punitive damages only if he presented sufficient evidence for the jury to conclude that M&M Transport acted with "malice" or reckless indifference to his federally protected rights. 42 U.S.C. § 1981a(b)(1). "[E]stablishing the requisite 'malice or reckless indifference' depends not on the egregiousness of the employer's misconduct, but instead on the 'employer's knowledge that it may be acting in violation of federal law.'" *Gile*, 213 F.3d at 375 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)). The Supreme Court set forth a three-part framework in *Kolstad* for determining whether an award of punitive damages is proper. First, punitive damages are proper when the "employer discriminates in the face of a perceived risk that its actions will violate federal law." *Gile*, 213 F.3d at 375. Second, the plaintiff must impute liability to the employer. *Bruso v. United Airlines, Inc.*, 239 F.3d 848,

858 (7th Cir. 2001). "The plaintiff must demonstrate that the employees who discriminated against him are managerial agents acting within the scope of their employment." *Id.* Third, even if prongs one and two are established, an employer can escape punitive liability by showing "it engaged in good faith efforts to implement an antidiscrimination policy." *Id.*

Here, the second prong is clearly met because Mr. Brennan was aware of the complaints of harassment and there is a claim that he failed to adequately address the harassment. In this sort of case, "the supervisor acts on behalf of the company in enforcing (or failing to enforce) its [ ] harassment policy, and it is therefore fair to attribute his knowledge and acts to the company." *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 569 (7th Cir. 2001). Additionally, Mr. Fulmore relies on the jokes told by Mr. Fratantuono to impute liability to the employer.

Moving to the first prong, an employer "need not be aware that it is engaging in discrimination." *Bruso*, 239 F.3d at 857. A plaintiff may satisfy the requirement that an employer acted in the face of a perceived risk "by demonstrating that the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's policies for implementing those laws." *Id.* at 858. As stated earlier, if an employer implements such a policy in good faith, it can avoid punitive damages. *Id.* In this case, the relevant individual is Mr. Brennan. The testimony at trial indicated that Mr. Fulmore and other employers repeatedly complained to Mr. Brennan about the racial harassment they experienced. Although Mr. Brennan does not specifically remember fielding complaints from anyone but Mr. Gatling, *see* Dkt. 136 at 117–119, the jury was free to believe the testimony from Mr. Fulmore and the others that they made complaints to Mr. Brennan.

Thus, construing the evidence in the light most favorable to Mr. Fulmore, the evidence sufficiently supports the conclusion that Mr. Brennan knew about the racial harassment and

would have known about the company's antidiscrimination policies. This policy was in the company handbook, and it is reasonable that Mr. Brennan would be aware of the implementation of the policies.

With respect to the third prong, the jury's punitive damage verdict could reasonably be based on the evidence that M&M Transport did not engage in good faith efforts to implement its antidiscrimination policy. To begin, M&M Transport solicited no evidence from Mr. Brennan about the implementation or enforcement of a policy that could establish the good faith defense to punitive damages.[1] M&M Transport's antidiscrimination policy (Exhibit 200 at page 6) provides that following a complaint, a prompt investigation would commence, interviews would be conducted and if inappropriate conduct has occurred, the company would act promptly to eliminate the offending conduct. The policy includes slurs, epithets, jokes or other written or oral derogatory comments connected to an individual's membership in a protected group as possible circumstances of harassment. The record is nearly void of evidence regarding any efforts to implement the policy. Mr. Brennan testified that he could not recall any complaints by Mr. Fulmore, but he did recall receiving a text message from Mr. Gatling complaining about a racial joke and complaints about racial jokes surrounding the election of President Obama. In response, Mr. Brennan told the first group of jokesters that their comments were inappropriate and he testified that he believed the Obama joking was "overblown."

In *May v. Chrysler Group, LLC*, 716 F.3d 963 (7th Cir. 2012), the district court determined that the jury's punitive damages verdict was without a legally sufficient basis because Chrysler employed numerous strategies to stop and prevent the harassment—Chrysler had all supervisors meet with their employees to revisit Chrysler's anti-harassment policy and implemented a protocol to stop the harassment. The evidence at trial showed that while far from

---

[1] Nor did M&M Transport mention the punitive damages claim in its closing argument.

perfect, Chrysler's actions had a positive effect and the harassment eventually ceased. *Id*. at 975.

Here, M &M Transport presented no evidence of any actions to stop or prevent racial harassment

following employee complaints. Rather, the evidence showed the harassment continued as late

as 2011, after Mr. Fulmore left the company, when Mr. Gatling received the text message video

from a dispatcher which depicted a cornflakes cereal box titled "coonflakes" and when opened,

played the song "jiggaboo, jiggaboo where are you".

Perhaps most damning to M&M Transport is that Mr. Fratantuono, at the executive level

of the company, told egregiously offensive jokes at company-wide events on an annual basis,

suggesting the company as a whole does not in good faith follow or implement its

antidiscrimination policies. The mere existence of a policy will not insulate an otherwise

offending employer from punitive damages. *Bruso*, 239 F.3d at 858–59. No "egregious" or

"outrageous" conduct by the employer is required, although of course, such a showing could

support a conclusion that the employer acted with the requisite mental state. *Kolstad*, 527 U.S. at

538. A reasonable jury could find it both "egregious" and "outrageous" when the executive level

of the company begins its annual meeting by stating "You know, I don't discriminate against any

race. I've talked about, you know Hispanics and Jews and Mexicans and—but I've never spoke

about African-American," and then proceeded to tell a joke referencing the stereotype[2] that black

men want to rape white women. *See* Dkt. 136 at 122. Unfortunately, Mr. Brennan appeared to

be de-sensitized to the annual race jokes as he testified as follows:

> Q.     How did you feel about those jokes?

---

[2] Traditionally, white southerners had used the stereotype of the black male rapist to justify the violent practice of lynching. African-American activists had responded that lynching had little to do with rape, but that accusations of rape helped to legitimize racially-motivated mob violence. http://gender.stanford.edu/news/2013/scottsboro-case-helped-redefine-rape.

A.      The—I was indifferent on them, I guess.  I mean, I was sort of surprised.  I was surprised that he would say those things.  But then, again, he did it with–every year, you know, so it wasn't singling out the African-American.  Like I said, he did that, a broad blanket, with everybody.

Dkt. 136 at 123, lines 18-23. The jury also heard testimony from Mr. Gatling that in addition to the drivers, the president, and all of management were present at the annual meeting when the African-American joke was told.  *See* Dkt. 136 at 35, lines 21-23.  The entire management team's condoning of racially offensive jokes is particularly offensive and creates an environment that is severe and pervasive. There is no good faith shown to implement its anti-discrimination policies when the employer shrugs off complaints of harassment and does nothing to stop annual racially offensive jokes in the work place.  Considering the totality of testimony, the jury had sufficient evidence to consider M&M Transports' actions and lack of action as reckless disregard for Mr. Fulmore's federally protected rights such that punitive damages are warranted.

**B.      Motion for New Trial**

M&M Transport contends it is entitled to a new trial due to Mr. Fulmore's repeated references to evidence barred by a motion *in limine* and failure to disclose Mr. Fratantuono's statements.  It further argues a statement made by the Court in the presence of the jury suggested that the Court had decided Mr. Fulmore's harassment claim in his favor.  In the alternative, M&M Transport asks the Court to reduce the compensatory and punitive awards.  The Court finds that while a new trial is not required under Federal Rule of Civil Procedure 59, the compensatory award and punitive damage award are excessive and must be reduced.

**1.      The Trial Was Fair to Moving Party**

M&M Transport argues the trial was not fair because Mr. Fulmore introduced prejudicial evidence about his termination and discipline and failed to disclose his intent to introduce statements made by Mr. Fratantuono.  First, a main dispute in pretrial filings, during trial, and

now in post-trial filings is the relevancy of evidence that Mr. Fulmore suffered discriminatory discipline, including termination, and the discriminatory distribution of route assignments. M&M Transport sought and was granted summary judgment on Mr. Fulmore's discriminatory termination claim. The Court found that Mr. Fulmore could not establish that his performance met M&M Transport's legitimate expectations, given Mr. Fulmore's accident history. Then, in ruling on M&M Transport's motion *in limine*, the Court ordered that evidence relating to Mr. Fulmore's previously adjudicated claims, i.e., his discriminatory termination claim, was prohibited. The Court reiterated this ruling during trial after M&M Transport objected to Mr. Fulmore introducing evidence about his termination and discipline. The Court heard extensive argument outside the presence of the jury and the Court ruled that evidence about Mr. Fulmore's termination was not relevant absent a supervisor harassment claim, which was not present in this case. The Court found, however, that Mr. Fulmore could present evidence concerning the totality of the workplace conditions, because harassment is not limited to statements but can include conduct, such as discriminatory route assignments or discipline. However, as stated, the Court ruled that it previously decided Mr. Fulmore was terminated for a legitimate, nondiscriminatory purpose; thus, evidence of Mr. Fulmore's termination was irrelevant and prohibited.

Throughout the trial, references were made—by both Mr. Fulmore and M&M Transport—to Mr. Fulmore's disciplinary history. The Court does not believe that the references rendered the trial unfair to M&M Transport. Although the Court made a preliminary ruling on M&M Transport's motion *in limine* to bar all evidence about Mr. Fulmore's termination, including discipline, at trial the Court recognized that harassment is not limited to statements, but can include conduct. As the Court stated in its *in limine* entry, an order granting or denying a

motion in *limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial." *See* Dkt. 110. Thus, it was not in direct violation of the Court's rulings to bring up Mr. Fulmore's discipline. Moreover, M&M Transport itself introduced evidence about the discipline, so it was given opportunity to address Mr. Fulmore's evidence. Additionally, M&M Transport highlights Mr. Fulmore's references to his lost wages and other damages relating to his termination, but no objections were raised at trial to this specific evidence. The Court finds that such evidence does not render the trial unfair, and to the extent the compensatory damages provide relief for Mr. Fulmore's termination—which was not before the jury—the Court will address this below. It is not enough for M&M Transport to contend that the jury was confused by Mr. Fulmore's evidence. The evidence presented at trial was not so abundant and prejudicial to prevent M&M Transport from a fair trial.

Second, Mr. Fulmore's failure to disclose the presentation of annual racially offensive jokes made by Mr. Fratantuono does not require a new trial. Federal Rule of Civil Procedure 26(a) requires parties to provide the names and the subjects of discoverable information of individuals that the party may use to support its case or defense. Rule 26(e) requires that if a disclosure is made under Rule 26(a) or in response to an interrogatory, a party must supplement its disclosure in a timely manner if it learns additional information that "has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Both Mr. Brennan and Mr. Fratantuono were listed in Plaintiff's Rule 26 initial disclosures as individuals likely to have discoverable information concerning the subjects of race discrimination, retaliation, and damages, Dkt. 113-2 at 2, but neither the initial disclosures nor response to interrogatories contained any detail about any discoverable information the stated individuals may possess. Further, M&M Transport points to the final pretrial conference, at

which the parties were to provide the Court and opposing counsel an overview of the witnesses and their testimony. This practice, however, is not intended to give the opposing sides an exact look into the trial testimony of witnesses. Rather, it is to inform the Court and opposing counsel of the general nature of such testimony.

M&M Transport argues that Mr. Fulmore purposefully hid from the Court and M&M Transport his intention to introduce the jokes at trial. While M&M Transport does not explicitly invoke Federal Rule of Civil Procedure 37, the Court interprets its position as arguing that the Fratantuono joke should have been disallowed and at this stage a new trial is required to remedy the violation. Rule 37(c)(1) provides that if a party fails to disclose information required by Rule 26(a) or 26(e), "the party is not, allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or *harmless*." This sanction is "automatic and mandatory" unless the offending party shows that the violation was justified or harmless. But the Seventh Circuit has also stated that the determination of harmlessness is in the Court's discretion under the following factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

There are several problems with M&M Transport's position. First, M&M Transport had substantial time to seek statements, depositions, or further discovery from Mr. Fulmore about the specific allegations and anticipated testimony of witnesses prior to trial. M&M Transport chose not to do so until after the discovery period had closed and partial summary judgment had been entered in its favor. Second, Mr. Fulmore's counsel first referenced the joke during opening statement. Specifically, counsel stated: "The evidence will show that Ken Frat, Fratantuono,

came to the location here in Indianapolis and made statements about -- depicting African-American men as rapists." Dkt. 134 at 28. M&M Transport did not object to this reference which was made prior to any witness testimony. In fact, the only objection regarding Mr. Fratantuono's statement was made during Mr. Fulmore's testimony, and the objection was to foundation regarding the timing of the statement and whether it was made while Mr. Fulmore was still employed. M&M Transport did not make any objection of surprise or failure to disclose. In *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994), the Seventh Circuit found that unreasonable delay of an objection under Rule 37 could result in a waiver of a party's rights under the Rule. Like the party in *Brandt*, M&M Transport fails to explain its failure to take action earlier in the litigation when it became aware Mr. Fulmore would rely upon the Mr. Fratantuono joke. Had a timely Rule 37 motion been made, the appropriate evaluation could have been made by the Court. Third, M&M Transport was able to thoroughly examine all witnesses regarding the jokes told by Mr. Fratantuono, both in cross examination of Mr. Fulmore and his witnesses and in direct examination of Mr. Brennan. Finally, Mr. Fratantuono is the Executive Vice President of the company. M&M Transport's entire management team was allegedly present when he made racially offensive jokes at the annual meetings. The Court is skeptical that M&M Transport did not know that offensive jokes had been told and could be raised during trial. Based on these circumstances, Mr. Fulmore's failure to disclose Mr. Fratantuono's racially offensive jokes does not require a new trial.

Third, M&M Transport contends that the Court's statement during Ms. Alvarez's testimony, "I think you've done that," Dkt. 134 at 148, suggests that the Court had already determined that M&M Transport tolerated the racial harassment of its employees. In context, however, the Court finds that the statement was not prejudicial. During the direct examination of

Ms. Alvarez, she was asked about being teased at M&M Transport for dating African-American men. M&M Transport objected to the relevancy of the line of questioning, to which Mr. Fulmore's counsel argued, "We're entitled *to show* it wasn't just Mr. Fulmore, but this employer tolerated the harassment of other people." *Id*. The Court responded, "I think you've done that. So let's move on." *Id*. The Court simply stated that Mr. Fulmore had an opportunity to present his position and needed to move on. Further, in its preliminary instructions, the Court instructed the jury: "You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be." Dkt. 134 at 14. Additionally, the jury was again instructed by the Court twice in its final instructions: "Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be. You are the sole and exclusive judges of the facts." Dkt. 136 at 181. And, "You should not be influenced by any objection, and you should not infer from any of my rulings that I have any view as to how you should decide the case." Dkt. 136 at 182. Therefore, the Court finds its statement did not render the trial unfair to M&M Transport.

Finally, M&M Transport argues the cumulative effect of the above warrants a new trial. "To prevail on their cumulative effect argument, [p]laintiffs must show: '(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered [their] trial fundamentally unfair." *Christmas v. City of Chi.*, 682 F.2d 632, 643 (7th Cir. 2012) (quoting *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011)). Further, "[i]f there are no errors or a single error, there can be no cumulative error." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). For the reasons explained above, the Court finds that there were no errors that had a cumulative effect of producing a trial unfair to M&M Transport. Although Mr. Fulmore may have introduced evidence in violation of the Court's rulings, the

Court rejects M&M Transport's contentions that the introduction of the joke by Mr. Fratantuono and the Court's statement were errors. Thus, there is no relief in the cumulative error doctrine and M&M Transport's Motion for New Trial **DENIED**.

### 2. The Clear Weight of the Evidence is Not Contrary to the Verdict

As the Court explained above in deciding the Rule 50(b) motion, there was sufficient evidence supporting the jury's verdict in favor of Mr. Fulmore. A new trial is not warranted and M&M's Motion for New Trial or Remittitur is **DENIED in part**.

## C. Motion for Remittitur or New Trial for Damages

M&M Transport contends that the compensatory and punitive awards are excessive and asks for a new trial under Rule 59 or remittitur of the damages. The Court addresses the awards separately below.

### 1. Compensatory Damages

When reviewing a compensatory damage award, the Court will consider "(1) whether the award is 'monstrously excessive'; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is comparable to those in similar cases." *Marion Cnty. Coroner's Office*, 612 F.3d at 930–31. Under the second consideration, the Court looks to whether the award indicates "it is merely a product of the jury's fevered imaginings or personal vendettas." *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995).

Mr. Fulmore was awarded $400,000.00 in compensatory damages, and the Court agrees that the award is excessive, not supported by the evidence, and must be reduced. First, Mr. Fulmore is not entitled to front or back pay, because his termination was not an issue before the jury. Mr. Fulmore incorrectly argues that he could seek such damages because a hostile work environment can culminate in termination or constructive discharge. While possibly correct,

neither of these situations is present in this case. The Court has ruled on summary judgment, motion *in limine*, and at trial that Mr. Fulmore's termination was irrelevant and not properly before the jury. Thus, the only damages to which Mr. Fulmore is entitled are for pain and suffering. *See* 42 U.S.C. § 1981a(1)(b).

Second, there is no rational connection between the evidence and an award of $400,000.00 for pain and suffering. There was no testimony or evidence that Mr. Fulmore has suffered emotional injury, beyond his statement that he was made to feel uncomfortable, angry, embarrassed, and sad. Dkt. 134 at 99. There was no psychological or medical testimony to the same, although such evidence is not required to show an emotional injury. *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 566 (7th Cir. 2006). Additionally, there was an abundance of second-hand evidence of harassment in this case, which the Seventh Circuit has recognized as being "less wounding." *Yuknis*, 481 F.3d at 555–56. M&M Transport directs the Court to *Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372, 389 (7th Cir. 2011), in which the plaintiff spent time on the witness stand describing the alleged conduct, and complained of feeling disturbed, devastated, and upset by the defendant's conduct. The Court noted that the jury had "ample opportunity to view and assess [plaintiff's] demeanor and emotional state." *Id.* It held that "[a]lthough there is a rational connection between this evidence and a substantial amount of compensatory damages, it does not approach the level required to uphold an award of $200,000." *Id.* This case presents a similar situation. Mr. Fulmore presented evidence sufficient for a rational jury to find in his favor and award compensatory damages, but the evidence— properly excluding front and back pay—cannot sustain $400,000.00 in compensatory damages.

Mr. Fulmore points to several cases in which compensatory damages ranged in the $200,000.00 to $400,000.00 level, claiming that his case is worse. The Court must disagree.

Take, for example, *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013), in which the plaintiff was awarded $400,000.00, but was reduced to the Title VII sex discrimination cap of $300,000.00. The plaintiff in that case experienced routine and explicit sexual harassment, including being locked in a porta-potty. *Id.* at 810. The plaintiff was physically threatened and directly harassed on a regular basis, unlike Mr. Fulmore who gave few specific examples of direct harassment and only generally alleged hearing comments weekly. The majority of the evidence was second-hand. Or consider, *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 295 (E.D.N.Y. 2010), a constructive discharge case in which a $1.5 million award was remitted to $500,000.00. There, the plaintiff brought a claim for a violation of his First Amendment rights including personal humiliation and defendants' attempts to ruin his professional career. *Id.* at 294. The plaintiff suffered depression, anxiety, and physical ailments as a result. *Id.* at 292. Unlike that plaintiff, Mr. Fulmore has not alleged that he suffers from any emotional injury. These are not comparable cases.

Rather, the Court finds M&M Transport presented cases more on point. Specifically, in *Marion County Coroner's Office*, 612 F.3d at 931, the plaintiff was awarded $200,000.00 and the Seventh Circuit found that "the evidence here does not come close to supporting the $200,000.00 award for compensatory damages," when the plaintiff's testimony was brief and only indicated the plaintiff had weekly therapy sessions for several months. *Id.* The court distinguished the case from *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999), in which there was a $200,000.00 award for ostracism, year-long depression, and threats of physical injury. It also distinguished the case from *Farfaras*, 433 F.3d at 566, which dealt with "repeated physical and verbal harassment." These two cases, unlike here and in *Marion County Coroner's Office*, had strong evidence supporting compensatory damages.

Thus, like the Seventh Circuit has under similar situations, the Court finds that a remittitur to $50,000.00 would keep the award within rational limits given the limited testimony on Mr. Fulmore's suffering, yet taking into account his obvious distress when presenting testimony regarding the emotional impact. *See Schandelmeier-Bartels*, 643 F.3d at 389; *Marion Cnty. Coroner's Office*, 612 F.3d at 931; *David v. Caterpillar, Inc.*, 324 F.3d 851, 364 (7th Cir. 2003) (finding $50,000.00 award appropriate for depression, stomach aches, difficulty sleeping, anxiety, and stress); *Avitia v. Metro. Club of Chi.*, 49 F.3d 1219, 1229 (7th Cir. 1995) ("Yet obviously the slighter the emotional distress, the lower the ceiling on a reasonable award of damages . . . ."). This is an appropriate remedy and a remittitur can correct the errors without resorting to a new trial. *See Fox v. Hayes*, 600 F.3d 819, 846 (7th Cir. 2010). If Mr. Fulmore does not accept the remittitur, then a new trial will be required. Therefore, M&M Transport's Motion for remittitur of compensatory damages is **GRANTED.**

### 2.      Punitive Damages

M&M Transport contends the award of punitive damages is unconstitutionally excessive. The Supreme Court addressed the constitutionality of punitive damage awards in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). In that case it set forth three guideposts to test excessiveness: the reprehensibility of the defendants' conduct, the ratio between the compensatory and punitive damages, and the award's similarity to civil or criminal penalties that could be imposed for comparable misconduct. *Id.* at 575–83; *Clark v. Metro Health Found., Inc.*, 90 F. Supp. 2d 976, 986 (N.D. Ind. 2000).

First, the Court has already discussed and found that sufficient evidence supports the jury's apparent finding that M&M Transport had the requisite mental state required under *Kolstad* to be liable for punitive damages. There is equally sufficient evidence supporting their

verdict that M&M Transport's conduct was reprehensible, including Mr. Fratantuono's annual jokes, the frequency of racial comments in the workplace, and the lack of attention to the anti-discrimination policies in place. The jury also could have believed based on the trial testimony that African-American drivers at large were given less desirable work. But the Court agrees with M&M Transport that the degree of reprehensibility in this case cannot support the large amount of punitive damages awarded. There was no intentional harm inflicted by Mr. Brennan as representative of M&M Transport and the harassment was never physically threatening.

Second, the damages are out of proportion to the compensatory damages and harm suffered. The jury awarded Mr. Fulmore $400,000.00 in compensatory damages and $2,850,000.00 in punitive damages. The original award is a ratio of approximately 7:1. The remitted award of $50,000.00 creates a ratio of 57:1. Neither ratio is reasonable under the facts of this case and the degree of reprehensibility, which has been discussed above. This also is not a case where very low compensatory damages may justify a higher ratio. *See Gore*, 517 U.S. at 581–82.

Third, the punitive award is much greater than the comparable statutory damages cap under Title VII. M&M Transport employs approximately 400 employees and the applicable cap for compensatory and punitive damages under 42 U.S.C. § 1981a(b)(3)(C) is $200,000.00. The multi-million dollar award is excessive in comparison. Mr. Fulmore points out that in making the decision to limit damages in Title VII cases, Congress made the implicit judgment not to limit damages in section 1981 jury cases as section 1981 was enacted to rid the country of racism, the most basic type of discrimination. Hence, he argues it would be inappropriate for the courts simply to extend the Title VII limitations to § 1981 cases under the guise of interpreting the Constitution.

Viewing the evidence in the light most favorable to the jury's verdict supports a punitive award on some level, however under *Gore*, the Court finds that the punitive award of $2,850,000.00 is unconstitutionally excessive. Judicial second-guessing of jury findings to determine remittitur of damages is difficult. The jury in this case was attentive, intelligent and diverse. In the context of a hostile work environment claim, the juror's traits, such as race, gender, wealth, and, life experiences may affect their views of reprehensibility and harm. Having observed the demeanor of each witness on the stand, in particular Mr. Fulmore and Mr. Brennan, a punitive award above the Title VII cap is supported. As stated immediately above, the comparable cap on damages under Title VII is $200,000.00. Moreover, the Seventh Circuit has found that ratios of 2:1 or 3:1 are not usually excessive considering statutes routinely provide for double and treble damages. *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1287 (7th Cir. 1995). Further, the court notes that no fixed ratio is necessary or desirable. *Id*. Therefore, the Court finds that an award of $250,000.00 addresses the jury's obvious concern with M&M Transport's conduct and is keeping within comparable statutory civil awards. This award is suitable to punish and deter M&M Transport. If Mr. Fulmore does not accept the remittitur, then a new trial will be required. Therefore, M&M Transport's Motion for New Trial or Remittitur is **GRANTED in part** as to punitive damages.

## IV.  CONCLUSION

Accordingly, M&M Transport's Motion for Judgment as a Matter of Law (Dkt. 153) is **DENIED**.  M&M Transport's Motion for New Trial or Remittitur (Dkt. 155) is **DENIED in part** and **GRANTED in part**.  M&M Transport's request for a new trial is **DENIED**, however, Mr. Fulmore's compensatory damages award is remitted to $50,000.00 and the punitive damages

award is remitted to $250,000.00.  If Mr. Fulmore does not accept the remitted award, a new trial is required.


**SO ORDERED.**

Date: _04/29/2014_

<span style="float:right">Hon. Tanya Walton Pratt, Judge<br>United States District Court<br>Southern District of Indiana</span>

DISTRIBUTION:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Michael W. Padgett
JACKSON LEWIS LLP
padgettm@jacksonlewis.com

Craig W. Wiley
JACKSON LEWIS P.C. - Indianapolis
craig.wiley@jacksonlewis.com